# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

JOHN DOE, *et al.*        *

       *

**Plaintiffs**        *

       *

**v.**        *        **CIVIL NO. JKB-15-517**

       *

**SALISBURY UNIVERSITY,** *et al.*        *

       *

**Defendants**        *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

This action was brought by John Doe and Richard Roe (collectively, "Plaintiffs") against Salisbury University ("SU"), Valerie Randall-Lee,[1] Helena Hill,[2] Jane Doe #1, Jane Doe #2, and Jane Doe #3 (collectively, "Defendants") alleging defamation, intentional infliction of emotional distress ("IIED"), negligence, civil conspiracy, and violations of Title IX, and seeking compensatory damages and injunctive relief. Now pending before the Court is Defendant Jane Doe #2's motion to dismiss (ECF No. 84), Defendant Jane Doe #3's motion to dismiss (ECF No. 85), Defendants Hill, Randall-Lee, and SU's (collectively, "SU Defendants") motion to dismiss (ECF No. 88), Defendant Jane Doe #1's motion to dismiss or in the alternative for summary judgment (ECF No. 92), Plaintiffs' motion to voluntarily dismiss claims (ECF No. 100), and Plaintiffs' motion to seal (ECF No. 101.) The issues have been briefed,[3] and no hearing is required, Local Rule 105.6 (D. Md. 2014). For the reasons explained below, SU Defendants' motion to dismiss (ECF No. 88) will be GRANTED IN PART AND DENIED IN PART,

---

[1] SU's Assistant Vice President of Student Affairs, Dean of Students, and Deputy Title IX Coordinator. (Fourth Amended Complaint, ECF No. 83 ¶ 10.)

[2] SU's Student Conduct Administrator. (*Id.* ¶ 11.)

[3] SU Defendants' motion to dismiss is briefed at ECF Nos. 88, 98, and 106. Defendant Jane Doe #1's motion to dismiss is briefed at ECF Nos. 92, 99, and 107. The other motions are all unopposed.

Defendant Jane Doe #1's motion to dismiss (ECF No. 92) will be GRANTED, Plaintiffs' motion to voluntarily dismiss claims (ECF No. 100) will be GRANTED IN PART AND DENIED AS MOOT IN PART, Defendant Jane Doe #2's and Defendant Jane Doe #3's motions to dismiss (ECF Nos. 84 and 85) will be DENIED AS MOOT, and Plaintiffs' motion to seal (ECF No. 101) will be GRANTED.

## I. Background[4]

Plaintiffs' claims stem from events that took place on October 5, 2013, at a college house party hosted and attended by SU students.  (Fourth Amended Complaint, ECF No. 83 ¶ 13.) Plaintiffs rely on an investigative report written by Defendant Hill to recount the details of that evening.  (*Id.* ¶ 14; Hill's Report, ECF No. 83-2.)  In relevant part, while Defendant Jane Doe #1

> was outside of the house, she was definitely seen by many making out . . . with [Plaintiff John Doe].  When she was inside the house, in the kitchen, several witnesses state that [Defendant Jane Doe #1] was drunk and dancing around . . . . At some point, [Defendant Jane Doe #1] traveled to the second floor of the house.  Reports by two individuals are that [she] walked upstairs on her own, with [Plaintiff John Doe]. . . . [Defendant Jane Doe #1] was seen laying on the bed . . . on her stomach and showing off her buttocks.  [Plaintiff John Doe] has stated that they were making out with her, and has said that she wanted them to do things to her. . . . [Defendant Jane Doe #1] remembers coming to for a very brief time, on her back, with guys all around her.  She remembers hands on her breasts and being kissed, at the same time.  She remembers being touched everywhere but did not elaborate as to where she was touched (she could not remember).

(Hill's Report at 1-2.)  After leaving the party, Defendant Jane Doe #1 "filed a complaint with the Wicomico County Sheriff's Office alleging Plaintiffs sexually assaulted [Jane Doe #1] at the Party," and repeated these same allegations to unnamed "third-parties."  (Fourth Amended Complaint ¶¶ 15-16.)

---

[4] The facts are recited here as alleged by the Plaintiffs, this being a motion to dismiss.  *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

On October 7, Defendant Jane Doe #1 received a medical examination "and these tests failed to establish any evidence of sexual assault." (*Id.* ¶ 19.) She also sent Plaintiff John Doe the following text message:

> Hey [John Doe], I know I'm probably the last person you want to hear from right now but I really need to say something. I just got back from the Sheriff's office. I completely understand you don't give two shits about what I have to say or don't believe me at all. I have no idea what happened. The last thing I remember from last night is kissing you on the stoop. The next thing after that I remember is sitting on Ryan's floor hysterically crying and being walked to the cop car. All I know is that the girl that was at the party was not me. This thing is being blown really out of proportion. I feel awful for you and your friends and I completely understand if you hate me and never want to see me again. I just wanted to make things right. Also, I know that the detective told you not to contact me but he's the one that told me I should contact you and let you know.

(ECF No. 83-3.)

Shortly thereafter, SU began an internal investigation into Defendant Jane Doe #1's sexual assault allegation. (Fourth Amended Complaint ¶ 21.) As part of SU's investigation, Defendants Randall-Lee and Hill prepared a report containing, *inter alia*, the following findings, conclusions, and recommendations:

> (a) 'concluded' that 'a preponderance of evidence' established a 'sexual assault more likely than not occurred upon [Jane Doe #1]' at the Party; (b) reached a 'finding' that: '[a] preponderance of evidence also indicates that [Jane Doe #1] engaged in non-consensual sexual activity while upstairs in the bedroom; and (c) determined '[t]he conclusion drawn here is that someone who is drunk or otherwise intoxicated cannot say "no," and lacks the capacity to say "no," even if he/she doesn't want to have sexual contact. It might be that he/she is conscious but still intoxicated or that he/she passed out and is unconscious. Either way, the sexual contact is non-consensual.'

(*Id.* ¶¶ 23, 25.) This report was then submitted to SU's Community Board ("the Board") for consideration. (*Id.* ¶ 23.)

On January 31, 2014, the Board conducted a hearing to determine "whether Plaintiffs violated the [SU Code of Conduct's] Sexual Harassment Policy ('The Policy') and/or other SU polices and/or procedures . . . ." (*Id.* ¶¶ 21-22.) Plaintiffs attended the hearing without counsel

and were placed behind a dividing wall so that they could not view testifying witnesses.  (*Id.* ¶¶ 26, 50.)  Defendant Jane Doe #1 did not testify, and while Plaintiffs were allowed to ask *some* questions during the hearing, they were "prohibited from asking many critical questions of witnesses."  (*Id.* ¶¶ 28-29.)  The Board heard conflicting testimony.  Some witnesses, including Plaintiffs, testified that Defendant Jane Doe #1 "initiated any and all physical contact with Plaintiffs" at the party.  (*Id.* ¶ 30.)  Other witnesses, including Defendants Jane Doe #2 and Jane Doe #3, testified that Plaintiffs were responsible for sexually assaulting Defendant Jane Doe #1.  (*Id.* ¶ 33.)

On February 6, Plaintiffs were notified that the Board found Plaintiffs "'responsible' for allegedly engaging in non-consensual contact with [Jane Doe #1]," and concluded that "'*a reasonable person would have known that [Jane Doe #1] was intoxicated and thus [Plaintiffs] took advantage of [Jane Doe #1's] incapacity.*'"  (*Id.* ¶ 40.)  On the basis of these findings, Plaintiffs were disciplined by the Board.  (*Id.* ¶ 40.)

In mid-February, Plaintiffs appealed the Board's findings.  (*Id.* ¶¶ 55-56.)  And on March 5, 2014, SU's Associate Vice President of Student Affairs, Mentha Hynes-Wilson, denied Plaintiffs' appeals.  (*Id.* ¶¶ 57-58.)  In addition to denying Plaintiffs' appeals, Associate Vice President Hynes-Wilson altered SU's disciplinary sanctions by requiring Plaintiffs to each draft a "Reflection" paper.  (*Id.* ¶¶ 49, 159.)

Plaintiff John Doe filed this lawsuit in the Circuit Court of Maryland for Wicomico County on May 15, 2014.  (ECF No. 2.)  But the pleadings, parties, and posture in this case have been modified repeatedly and materially.  Plaintiff Richard Roe was added as a party on October 3, 2014.  (First Amended Complaint, ECF No. 29.)  Plaintiffs then amended their complaint twice more (Second Amended Complaint, ECF No. 43; Third Amended Complaint, ECF No. 55) before SU Defendants filed a notice of removal on February 23, 2015, (ECF No. 1).  Upon this

case's removal, the Court dismissed Plaintiffs' preceding complaints without prejudice and ordered that Plaintiffs file a fourth, superseding amended complaint.  (ECF No. 70.)  Plaintiffs filed their Fourth Amended Complaint on March 20, 2015.  (ECF No. 83.)

## II.  Standard of Dismissal for Failure to State a Claim

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.  *Id.* at 679.  As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . .  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555.

## III.  Analysis

The Court has carefully considered Defendants' motions to dismiss, Plaintiffs' responses in opposition, and most significantly Plaintiffs' Fourth Amended Complaint.  As will be discussed below, the Court is troubled by Plaintiffs' inability to satisfy the pleading standards set forth in *Twombly* and *Iqbal* as to most of their claims, particularly given that Plaintiffs have already had four opportunities to amend their pleadings.  The Fourth Amended Complaint suffers from a reliance on threadbare recitals of crucial elements.  And while Plaintiffs have attempted to

augment their factual allegations through affidavits and exhibits attached to their responses in opposition, courts "generally do not consider materials other than the complaint and documents incorporated into it when evaluating that complaint under Rule 12(b)(6), though courts may consider a document attached by the *defendant* to its motion to dismiss where the document 'was integral to and explicitly relied on in the complaint' . . . ." *Braun v. Maynard*, 652 F.3d 557, 559 n.1 (4th Cir. 2011) (emphasis added) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). In the absence of Plaintiffs' improperly relied upon affidavits and exhibits, Plaintiffs' Fourth Amended Complaint fails to state a plausible claim for relief in nearly every count.

Plaintiffs may, of course, seek leave to amend their complaint for a fifth time pursuant to Federal Rule of Civil Procedure 15(a)(2). The Court does not now decide, however, whether such leave to amend would be granted.

### A. *Defendant Jane Doe #1's Motion to Dismiss (ECF No. 92)*

Plaintiffs allege three claims against Defendant Jane Doe #1 in their Fourth Amended Complaint: Defamation (Count I), Civil Conspiracy (Count IV), and IIED (Count V). The Court considers each in turn.

#### 1. *Count I: Defamation*

Plaintiffs claim that Defendant Jane Doe #1 is liable for defamation based on statements she made alleging that she had been the victim of sexual assault, and specifically that Plaintiffs committed the assault. (Fourth Amended Complaint ¶¶ 60-67.) "Under Maryland law, to present a prima facie case of defamation, a plaintiff must establish four elements: (1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner*, 935 A.2d 719, 723-24 (Md. 2007).

To satisfy federal pleading standards, a plaintiff must specifically allege each defamatory statement. *See English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 179 F.3d 862, 1999 WL 89125, at *3 (4th Cir. 1999) (unpublished table decision) (In a defamation claim, "[a] plaintiff may not baldly allege a broad course of conduct over a lengthy period of time and later sue on any act that occurred during that time period."); *see also Tucker v. Specialized Loan Servicing, LLC*, Civ. No. PWG-14-813, 2015 WL 452285, at *12 (D. Md. Feb. 3, 2015) (applying the pleading standard set out in *English Boiler*); *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 344 (D. Md. 2011) ("Every alleged defamatory statement constitutes 'a separate instance of defamation,' which 'a plaintiff must specifically allege.'" (quoting *English Boiler*, 1999 WL 89125, at *3)); *Brown v. Ferguson Enters., Inc.*, Civ. No. CCB-12-1817, 2012 WL 6185310, at *3 (D. Md. Dec. 11, 2012) (finding that a plaintiff's allegations could not plausibly support a claim for defamation where they "contain[ed] no specific description of the content of the alleged statements, nor when and how they were communicated").

In this case, Plaintiffs' defamation pleadings are wholly insufficient. Plaintiffs vaguely contend that, "[u]pon information and belief, [Jane Doe #1] published written and/or oral statements to third-parties alleging Plaintiffs sexually assaulted [Jane Doe #1] at the Party . . . ." (Fourth Amended Complaint ¶ 16.) Plaintiffs also contend that Defendant Jane Doe #1 made these allegedly defamatory statements "to SU and other third-parties." (*Id.* ¶ 61.) Plaintiffs now "seek to dismiss their claims against [Jane Doe #1] for her defamatory statements made *directly to* SU employees who were *directly involved* in SU's disciplinary proceeding against Plaintiffs." (ECF No. 99-1 at 10.) Plaintiffs are left alleging simply that, upon information and belief, Defendant Jane Doe #1 made defamatory statements to unnamed and perhaps unknown third parties. The Fourth Amended Complaint is devoid of any reference to who these "third-parties" actually are. And while the Court takes as true Plaintiffs' pleadings—that Defendant Jane Doe

#1 did make such defamatory statements—Plaintiffs fail to specifically allege any particular defamatory statement made to any particular third party.[5]  For this reason the Court will grant Defendant Jane Doe #1's motion to dismiss Count I.

Even if Plaintiffs had made sufficient allegations, Defendant Jane Doe #1's statements would likely be protected by a qualified or conditional privilege.  Maryland courts recognize that "a person ought to be shielded against civil liability for defamation where, in good faith, [s]he publishes a statement in furtherance of his [or her] own legitimate interests, or those shared in common with the recipient or third parties . . . ."  *Gohari v. Darvish*, 767 A.2d 321, 328 (Md. 2001) (quoting *Marchesi v. Franchino*, 387 A.2d 1129, 1131 (Md. 1978)).  Once a conditional privilege has been identified, a plaintiff's defamation claim will only survive if he can show that the defendant acted with malice, "defined as 'a person's actual knowledge that his [or her] statement is false, coupled with his [or her] intent to deceive another by means of that statement.'"  *Piscatelli*, 35 A.3d at 1148 (Md. 2012) (quoting *Ellerin v. Fairfax Sav. F.S.B.*, 652 A.2d 1117, 1129 (Md. 1995)).

In this case, Defendant Jane Doe #1's alleged statements were probably made in furtherance of her legitimate interest in personal safety and the safety of those closest to her.  Defendant Jane Doe #1 allegedly told her close friends and family that she had been, or may have been, the victim of a sexual assault.  (*See* ECF No. 99-1 at 8-10.)  She has not been accused of publishing these allegations to a broad public forum such as the school newspaper or a social media network.  Rather, Defendant Jane Doe #1 is accused of confiding in those people who are rightly understood to be part of Defendant Jane Doe #1's support system—close friends and

---

[5] The Court recognizes that Plaintiffs have included new factual allegations in their response in opposition (ECF No. 99), some of which name particular third parties who may have heard Defendant Jane Doe #1's sexual assault allegations.  The Court does not consider these new allegations, however, because "for the purposes of a motion to dismiss, [a] Plaintiff is bound by [his or] her Complaint and cannot amend it through [his or] her briefs."  *Stahlman v. United States*, 995 F. Supp. 2d 446, 454 (D. Md. 2014).

family.  The Court is mindful of the objectionable policy implications that could follow in a world where such statements are unprivileged.  Victims would have to weigh, on the one hand, the value of reaching out for help in the aftermath of a traumatic sexual assault, and on the other hand the risk that they could be subject to civil liability for defamation if the occurrence of sexual assault is contested by the alleged perpetrator.  Fortunately, Maryland courts do recognize a conditional privilege for such statements.

### 2.  *Count IV: Civil Conspiracy*

Defendant Jane Doe #1 moves to dismiss Plaintiffs' claim for civil conspiracy (ECF No. 92-1 at 14), and Plaintiffs separately move for the same relief, (ECF No. 100 at 2).  For this reason, the Court will grant Jane Doe #1's motion to dismiss Count IV.

### 3.  *Count V: IIED*

Plaintiffs allege that Defendant Jane Doe #1 "intentionally or recklessly formulated false statements" accusing Plaintiffs of having committed sexual assault, and that these false statements constitute IIED.  A claim of IIED has four elements: (1) intentional or reckless conduct that is (2) extreme and outrageous and is (3) causally connected to the emotional distress, which is (4) severe.  *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000). This is not an easy claim to establish, and "the failure of any element will defeat the cause of action . . . ."  *Gibbons v. Bank of Am. Corp.*, Civ. No. JFM-08-3511, 2012 WL 94569, at *8 (D. Md. Jan. 11, 2012).

The tort of IIED "is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct . . . . 'of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'"  *Ky. Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 607 A.2d 8, 11 (Md. 1992) (quoting W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 12, at 60-61 (5th ed. 1984)); *see also Lasater v. Guttman*, 5 A.3d 79, 90 (Md. Ct.

Spec. App. 2010) (noting that, as of 2010, "[i]n the 30 years since the Court of Appeals recognized the tort of IIED, it has upheld such claims only four times"). "[L]iability for the tort of [IIED] should be . . . 'reserved for those wounds that are truly severe and incapable of healing themselves.'" *Caldor, Inc. v. Bowden*, 625 A.2d 959, 963 (Md. 1993) (quoting *Figueiredo-Torres v. Nickel*, 584 A.2d 69, 75 (Md. 1991)).

At a minimum, Plaintiffs fail to plausibly allege facts to support an inference that Plaintiffs suffered *severe* emotional distress as a result of Defendant Jane Doe #1's conduct. "The fourth element of [IIED] 'requires the plaintiff to show that he suffered a *severely* disabling emotional response to the defendant's conduct.'" *Caldor*, 625 A.2d at 964 (quoting *Harris v. Jones*, 380 A.2d 611, 616 (Md. 1977)). The plaintiff's "distress [must be] so severe that 'no reasonable man could be expected to endure it.'" *Thacker v. City of Hyattsville*, 762 A.2d 172, 197 (Md. 2000) (quoting *Harris*, 380 A.2d at 618).

Plaintiffs' Fourth Amended Complaint includes nothing more than a bare—and thus insufficient—recitation of the fourth element[6]: "Plaintiffs have suffered and will continue to suffer, severe and extreme emotional distress." (Fourth Amended Complaint ¶ 95.) For this reason, the Court will grant Defendant Jane Doe #1's motion to dismiss Count V.

---

[6] In their response in opposition (ECF No. 99), Plaintiffs include new factual allegations and related exhibits to support their IIED claim. In particular, Plaintiffs attached their own affidavits, claiming that Defendant Jane Doe #1's conduct caused Plaintiffs to experience anxiety, depression, suicidal feelings, nightmares, poor concentration, and panic attacks, that they "sought assistance from a health care professional," and that they now feel "mistrustful and emotionally distant from most females." (*See* ECF Nos. 99-49 ¶ 5 and 99-56 ¶ 5.) Even if the Court were to treat these affidavits as part of Plaintiffs' Fourth Amended Complaint—which it does not—Plaintiffs' alleged emotional distress does not rise to the level of severity required under Maryland law. Maryland courts have previously found *no severe emotional distress* in the following comparable situations: (1) where a plaintiff visited a psychologist once, experienced feelings of insecurity and weight loss, and developed an inability to trust others, *Caldor*, 625 A.2d at 963-65 (Md. 1993); (2) where a plaintiff suffered from severe depression, humiliation, and anxiety, *Hanna v. Emergency Med. Assocs.*, 551 A.2d 492, 499 (Md. Ct. Spec. App. 1989); (3) where a plaintiff failed to specifically allege what kind of treatment he had received, "how long the treatment lasted, whether it was successful or is still continuing, whether it was periodic or intensive, and so forth," *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 115 (Md. 2000); and (4) where a plaintiff needed to see a physician, suffered from humiliation, an aggravated nervous condition, and a newly developed speech impediment, *Harris*, 380 A.2d 611, 616-17. Plaintiffs' own alleged emotional distress is on par with the above-listed instances, where courts have found a lack of requisite severity.

**B.  SU Defendants' Motion to Dismiss (ECF No. 88)**

Plaintiffs allege nine claims against SU Defendants in their Fourth Amended Complaint: Defamation (Count VI), Negligence (Count VII), Civil Conspiracy (Count VIII), IIED (Count IX), Sexual Harassment (Count X), Deliberate Indifference (Count XI), Erroneous Outcome (Count XII), Retaliation (Count XIII), and seeking injunctive relief (Count XIV).  The Court considers each in turn.

### 1.  Count VI: Defamation

In Count VI, Plaintiffs allege that SU Defendants are liable for defamation based on statements they made to the SU Community Board "alleging Plaintiffs sexually assaulted [Defendant Jane Doe #1] at the Party."  (Fourth Amended Complaint ¶¶ 38, 96-102.)  SU Defendants allegedly "present[ed] the Board . . . [with] false information suggesting Plaintiffs engaged in sexual misconduct with [Jane Doe #1] . . . ."  (*Id.*)  SU Defendants contend that any such statements are entitled to a conditional privilege that excuses all legal fault, and that Plaintiffs' pleadings fail to allege that SU Defendants waived this privilege.  (ECF No. 88-1 at 39-44.)

Maryland courts recognize that a qualified or conditional privilege to defamation is "conditioned upon the absence of malice and is forfeited if it is abused."  *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (Md. 2012) (quoting *Smith v. Danielczyk*, 928 A.2d 795, 806 (Md. 2007)). "Whether a conditional privilege exists is a question of law, and the defendant bears the burden of proof to establish the privilege."  *Id.*  SU Defendants claim that their allegedly defamatory statements are shielded by the "common interest privilege."  (ECF No. 88-1 at 40.)  The common interest privilege "covers speakers and recipients within a readily definable business or organizational relationship . . . ."  *Shirley v. Heckman*, 75 A.3d 421, 426 (Md. Ct. Spec. App. 2013).  "The idea is to promote free exchange of relevant information among those engaged in a

common enterprise or activity and to permit them to make appropriate internal communications and share consultations without fear of suit." *Gohari v. Darvish*, 767 A.2d 321, 329 (Md. 2001) (quoting Dan B. Dobbs, *The Law of Torts* § 414, at 1160-61 (2000)).  The Court finds that, as a threshold matter, SU Defendants did share a qualifying organizational relationship with shared goals.  They were collectively conducting a disciplinary hearing, and to do so effectively it was essential that SU Defendants share information with each other.  Thus, SU Defendants have made a prima facie case that the common interest privilege applies.

As noted in Section III.A.1. *supra*, once a conditional privilege has been identified, a plaintiff's defamation claim will only survive if he can show that the defendant acted with malice, "defined as 'a person's actual knowledge that his [or her] statement is false, coupled with his [or her] intent to deceive another by means of that statement.'"  *Piscatelli*, 35 A.3d at 1148 (Md. 2012) (quoting *Ellerin v. Fairfax Sav. F.S.B.,* 652 A.2d 1117, 1129 (Md. 1995)).  "All relevant circumstances are admissible when determining whether a defendant abused a common law defamation privilege, 'including the defendant's reasonable belief in the truth of his statements, the excessive nature of the language used, and whether the communication was made in a proper manner and only to proper parties.'"  *Id.* (quoting *Orrison v. Vance*, 277 A.2d 573, 578 (Md. 1971)).  "While malice is usually a question for the fact-finder, it need not be submitted to the fact-finder when the plaintiff fails to allege or prove facts that would support a finding of malice."  *Id.*

Plaintiffs have failed to plausibly allege that SU Defendants made any statements with the malice necessary to defeat a conditional privilege.  The Court has identified only three references in the Fourth Amended Complaint to SU Defendants' supposed malice with regard to Plaintiffs' defamation claim:

- "Upon information and belief, SU employees, including but not limited to, Lee and Hill, made written and/or oral statements to the Board and other unnamed third-parties alleging Plaintiffs sexually assaulted [Jane Doe #1] at the Party (and/or) by presenting the Board and other unnamed third-parties false information suggesting Plaintiffs engaged in sexual misconduct with [Jane Doe #1] ("SU Employee's Assault Allegations")."  (Fourth Amended Complaint ¶ 38.)

- "SU employees knew, or should have known SU Employee's Assault Allegations were false and had no reasonable basis in fact."  (*Id.* ¶ 39.)

- "SU Employee's Assault Allegations are false and defamatory and were made with actual malice motivated by ill will, intent to deceive, improper motive, and/or an affirmative act to injure Plaintiffs (or) with reckless disregard for the truth or falsity."  (*Id.* ¶ 99.)

Plaintiffs' Fourth Amended Complaint does nothing more than deliver a bare recitation of the legal standard for malice.  Plaintiffs do not (a) call into question whether SU Defendants reasonably believed in the truth of their statements, (b) allege that the language used was excessive in nature, (c) allege that the statements involved unsolicited disclosures, or (d) allege that the communication was made in an improper manner or to improper parties.  *See Piscatelli*, 35 A.3d at 1148.  On these naked assertions alone, the Court finds that Plaintiffs have failed to allege facts that would support a finding of malice.  Thus, SU Defendants' statements are protected by a conditional privilege, and the Court will grant SU Defendants' motion to dismiss Count VI.  The Court need not address Defendants Randall-Lee's and Hill's claimed immunity under the Maryland Tort Claims Act ("MTCA"), having dismissed Plaintiffs' entire claim for defamation on other grounds.

### 2.  Count VII: Negligence

In Count VII, Plaintiffs allege that SU Defendants "negligently breached obligations owed to Plaintiffs under SU Policies and procedures . . . ."  (Fourth Amended Complaint ¶ 105.) Under Maryland law, the elements of a cause of action in negligence are: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty,

13

(3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of duty." *State v. Copes*, 927 A.2d 426, 437 (Md. Ct. Spec. App. 2007) (quoting *Chi. Title Ins. Co. v. Allfirst Bank*, 905 A.2d 366, 378 (Md. 2006)).

SU Defendants move to dismiss Plaintiffs' claim, contending that Plaintiffs have failed to allege the existence of a duty to protect Plaintiffs that was owed by SU Defendants. (ECF No. 88-1 at 48-51.) "Whether a legal duty exists is a question of law, to be decided by the court." *Pendleton v. State*, 921 A.2d 196, 204 (Md. 2007).

To begin, the parties appear to disagree over who carries the burden of proof on a motion to dismiss. SU Defendants rightly contend that "[i]t is the burden of the plaintiff . . . to adduce evidence of a duty that was breached." (ECF No. 88-1 at 48 (quoting *Rhaney v. Univ. of Md. E. Shore*, 880 A.2d 357, 363 (Md. 2005).) It is true that Plaintiffs bear the *ultimate* burden of proof at summary judgment or at trial. But SU Defendants misapply the quoted standard, and appear to argue that Plaintiffs have the burden to adduce evidence on a motion to dismiss. In fact, "[a]ll federal courts are in agreement that the burden is on the moving party [on a motion to dismiss] to prove that no legally cognizable claim for relief exists." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004) (collecting cases). Plaintiffs need only draft a complaint containing factual allegations that raise a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, SU Defendants must show why Plaintiffs' Fourth Amended Complaint fails to satisfy this requisite pleading standard.

SU Defendants also wrongly imply that a duty of care may *only* "arise (1) by statute or rule; (2) by contractual or private relationship; or (3) indirectly or impliedly by virtue of the relationship between the tortfeasor and the Fourth Party."[7] (ECF No. 88-1 at 48 (citing *Bobo v. State*, 697 A.2d 1371, 1376 (Md. 1997).) The quoted standard actually only applies when

---

[7] The Court presumes that SU Defendants intended to write "*third* party."

assessing whether there exists a "'special duty' to protect another from the acts of a third party . . . ." *Remsburg v. Montgomery*, 831 A.2d 18, 27 (Md. 2003) (restating the rule in *Bobo*). Such an analysis might be necessary, for example, where a college student sues his or her school for failing to discipline a different student—a third party—who has been accused of sexual harassment or bullying. This hypothetical plaintiff would be asking the Court to assign a legal duty to the school, which may obligate the school to control the conduct of this third party student. In *that* case the Court would apply the test set out in *Bobo*. In *this* case, the Court finds no evidence to suggest that Plaintiffs seek to hold SU Defendants liable for failure to control the conduct of a third party. Rather, Plaintiffs allege that SU Defendants were negligent in their direct and personal treatment of Plaintiffs, as evidenced by their failure to adhere to SU's policies and procedures. (Fourth Amended Complaint ¶ 105.)

In all other negligence actions, the Court of Appeals of Maryland has explained that "[t]here is no set formula for the determination of whether a duty exists." *Doe v. Pharmacia & Upjohn Co.*, 879 A.2d 1088, 1092 (Md. 2005). Duty may be defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Patton v. U.S. Rugby Football*, 851 A.2d 566, 571 (Md. 2004) (quoting W. Page Keeton, et al., *Prosser and Keeton on The Law of Torts* § 53 (5th ed. 1984)). "At its core, the determination of whether a duty exists represents a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant." *Gourdine v. Crews*, 955 A.2d 769, 783 (Md. 2008). Courts consider a variety of factors to determine whether a duty exists:

> The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Pendleton*, 921 A.2d at 205 (quoting *Ashburn v. Anne Arundel Cnty.*, 510 A.2d 1078, 1083 (Md. 1986)).

SU Defendants' motion to dismiss does not begin to address any of these factors.  Thus, SU Defendants have failed to satisfy their burden as the movants, and the Court will deny their motion to dismiss Count VII.  This ruling, of course, does not preclude SU Defendants from challenging Count VII later in the life of this case.

SU Defendants contend that, even if Plaintiffs' negligence claim survives, Defendants Randall-Lee and Hill are entitled to immunity in their personal capacities as dictated by the MTCA.  (ECF No. 88-1 at 33-38.)  "The MTCA grants State personnel immunity from liability 'for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence.'"  *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 849 (D. Md. 2012) (quoting Md. Code Cts. & Jud. Proc. § 5-522(b) (2006 Repl. Vol., 2011 Supp.)).  In Count VII, Plaintiffs do not allege that SU Defendants breached their duty with malice or gross negligence.  (*See* Fourth Amended Complaint ¶¶ 103-106.)  Thus, the Court finds that Defendants Randall-Lee and Hill are personally immune from liability for negligence. Plaintiffs' claims against Defendants Randall-Lee and Hill in their personal capacities will be dismissed.

### 3. *Count VIII: Civil Conspiracy*

Plaintiffs' civil conspiracy claim alleges that SU Defendants engaged "in a civil conspiracy to defame Plaintiffs . . . ."  (Fourth Amended Complaint ¶ 110.)  The Maryland Court of Appeals "has consistently held that '"conspiracy" is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff.'"  *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1039, 1044-45

16

(Md. 1995) (quoting *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs.*, 650 A.2d 260, 265 n.8 (Md. 1994)).   The Court has already determined it should dismiss Plaintiffs' defamation claims in Sections III.A.1. and III.B.1. *supra*.   Thus, with no ancillary defamation action, the Court will grant SU Defendants' motion to dismiss Plaintiffs' civil conspiracy to defame claim, which is in Count VIII.   The Court need not address Defendants Randall-Lee's and Hill's claimed immunity under the MTCA, having dismissed Plaintiffs' entire claim for civil conspiracy on other grounds.

### 4.   *Count IX: IIED*

The Court will grant SU Defendants' motion to dismiss Plaintiffs' IIED claim for the same reasons the Court set out in Section III.A.3. *supra*.   Plaintiffs have failed to plausibly allege facts giving rise to an inference that Plaintiffs have experienced *severe* emotional distress.   The Court need not address Defendants Randall-Lee's and Hill's claimed immunity under the MTCA, having dismissed Plaintiffs' entire claim for IIED on other grounds.

### 5.   *Title IX Claims*

Title IX provides that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C.A. § 1681(a) (West 2010).   The Supreme Court has held that Title IX's ban on "discrimination" encompasses bans on sexual harassment and retaliation, and that private rights of action are implied for both forms of discrimination under the statute.   *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75-76 (1992) (discussing the implied right of action under Title IX for sexual harassment); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-84 (2005) (discussing the implied right of action under Title IX for retaliation).   The Fourth Circuit has advised that "Title VII, and the judicial interpretations of it, provide a persuasive

body of standards to which we may look in shaping the contours of a private right of action under Title IX." *Preston v. Va. ex. rel. New River Cmty. Coll.*, 31 F.3d 203, 207 (4th Cir. 1994).

### a.  Count X: Sexual Harassment

In Count X, Plaintiffs claim hostile environment sexual harassment in violation of Title IX.[8] (Fourth Amended Complaint ¶¶ 118-141.)  To establish a claim of sexual harassment, "a plaintiff must show that (1) [he] was a student at an educational institution receiving federal funds, (2) [he] was subjected to harassment based on [his] sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007).

Plaintiffs allege that they were subject to the following forms of "harassment": (1) SU's employees investigated and disciplined Plaintiffs' alleged sexual assault without proper jurisdiction (Fourth Amended Complaint ¶ 124); (2) SU's employees lacked proper training to investigate and/or discipline pursuant to Title IX (*id.* ¶¶ 125, 131); and (3) SU's policies are inadequate and biased against men in violation of Title IX, the due process clause of the Constitution, and the customs and practices of the higher education industry (*id.* ¶¶ 126, 128; 130, 132-133).

Upon similar facts, the Court recently found that such allegations of sexual harassment are without merit.  *See generally Doe v. Salisbury Univ.*, Civ. No. JKB-14-3853, 2015 WL 3478134, at *3-5 (D. Md. June 2, 2015).  In *Doe*, the plaintiff alleged that his school lacked authority to discipline and that the school's sexual assault policies were applied in a

---

[8] Count X also alleges "discrimination" generally, although upon careful review the Court finds that Plaintiffs' general discrimination allegations are more properly made part of their erroneous outcome claim (Count XII). Moreover, Plaintiffs' response in opposition with regard to Count X only addresses the law of sexual harassment. For these reasons, the Court construes Count X as a pure sexual harassment claim, and recasts Plaintiffs' general discrimination allegations as supporting Plaintiffs' erroneous outcome claim (Count XII).

discriminatory manner.  *Id.* at *3.  The Court concluded that "[t]hese allegations may present *some* form of sex discrimination in Title IX, but they do not involve the sex-specific language or conduct designed to humiliate, ridicule, intimidate, or insult, necessary to state a claim for harassment."  *Id.*

For the same reasons as articulated in *Doe*, the Court here finds that the Fourth Amended Complaint does not plausibly state a claim of sexual harassment.  Thus, the Court will grant SU Defendants' motion to dismiss Count X.

### b.  *Count XI: Deliberate Indifference*

In Count XI, Plaintiffs allege that SU acted with deliberate indifference towards Plaintiffs.  (Fourth Amended Complaint ¶¶ 142-148.)  *Deliberate indifference* is a theory of liability, not a standalone violation under Title IX.  *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290-91 (1998) (holding that *deliberate indifference* is the standard for imputing liability to an institution under Title IX); *Baynard v. Malone*, 268 F.3d 228, 240 (4th Cir. 2001) (Michael, J., dissenting) (citing *Gebser*, 524 U.S. at 286) (discussing the "deliberate indifference theory of liability recognized by the Supreme Court").  Thus, deliberate indifference is not properly raised as a separate count in Plaintiffs' complaint, and the Court will grant SU Defendants' motion to dismiss Count XI.

### c.  *Count XII: Erroneous Outcome*

In Count XII, Plaintiffs allege that SU's decision to discipline Plaintiffs was an erroneous outcome, motivated by gender bias.  (Fourth Amended Complaint ¶¶ 149-155.)  Specifically, Plaintiffs argue that SU's disciplinary proceedings involved twenty-four procedural defects that resulted in Plaintiffs' wrongful suspension, and that these defects were motivated by Plaintiffs' gender.  (ECF No. 98-1 at 28-30.)

To assess whether a school's disciplinary proceedings produced an erroneous outcome in violation of Title IX, courts typically apply a framework first introduced in *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).  *See, e.g.*, *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638-41 (6th Cir. 2003) (citing favorably to *Yusuf*); *Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 132 F.3d 949, 961-62 (4th Cir. 1997) (same), *rev'd en banc on other grounds*, 169 F.3d 820 (4th Cir. 1999); *Doe v. Washington & Lee Univ.*, No. 6:14-CV-00052, 2015 WL 4647996, at *9-10 (W.D. Va. Aug. 5, 2015) (same).  In an erroneous outcome case, "the claim is that the plaintiff was innocent and wrongly found to have committed an offense" on the basis of gender bias.  *Yusuf*, 35 F.3d at 715.

To state a claim for erroneous outcome discrimination, a plaintiff must allege (1) "a procedurally or otherwise flawed proceeding"; (2) "that has led to an adverse and erroneous outcome"; and (3) "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding."  *Id.*  To satisfy the third element, a plaintiff must do more than merely rely on "a conclusory allegation of gender discrimination . . . ."  *Id.*  Sufficiently particularized allegations of gender discrimination "might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."  *Id.*

Plaintiffs allege numerous procedural defects, which taken together satisfy the first element of their erroneous outcome claim: (1) Plaintiffs were told that they would "have an opportunity to ask questions of the Investigator, Complainant and Witnesses" at the Board's hearing (ECF No. 83-5), and yet "Plaintiffs were prohibited from asking many critical questions of witnesses . . . ." (Fourth Amended Complaint ¶ 29); (2) SU barred Plaintiffs from reviewing witness statements and the list of witnesses prior to the hearing, and failed to provide Plaintiffs with all evidence that was to be presented to the Board (*id.* ¶ 48); (3) SU told Plaintiffs that they

were not entitled to have an attorney present at the hearing, even though the SU Code of Conduct states that students who are likely to face federal criminal charges may request that their attorney be present (*id.* ¶ 50); (4) Defendants Randall-Lee and Hill improperly made "Findings" and "Conclusions/Recommendations" based upon "the preponderance of the evidence," improperly presented these findings and conclusions to the Board, and as a result the Board was improperly influenced (*id.* ¶¶ 23-25); and (5) Defendants Randall-Lee and Hill presented "false information" to the Board (*id.* ¶ 38).[9]  Plaintiffs have also adequately alleged that these procedural flaws led to an adverse and erroneous outcome, satisfying the second element.  (*See id.* ¶¶ 151-153.)

On the third element—particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding—the allegations before the Court present a close call.  Plaintiffs' Fourth Amended Complaint alleges that "SU has created an environment in which male students accused of sexual assault, such as Plaintiffs, are fundamentally denied due process as to be virtually assured of a finding of guilt."  (*Id.* ¶ 128.)  In support of this serious allegation, Plaintiffs refer to "[e]vidence of this environment" attached to the Fourth Amended Complaint in the form of eleven exhibits.  Most relied-upon exhibits are public notices or newsletters informing the student body writ large about the risk of sexual assault on college campuses.  (ECF No. 83-8 (a description of SU's "Campus Against Violence program"); ECF 83-9 (an SU Police advertisement for "Rape Aggression Defense Training"); ECF 83-11 (an SU Police eNewsletter about the occurrence of "Acquaintance Rape of College Students"); ECF No. 83-12 (SU's Board of Regents' report summarizing updates to the school's "Sexual Misconduct

---

[9] To support their contention that SU Defendants presented false and/or incomplete information to the Board, Plaintiffs regularly describe Defendant Jane Doe #1's alleged sexual behavior, preferences, and reputation prior to the alleged sexual assault that forms the basis of this lawsuit.  (*See, e.g.*, ECF No. 98-1 at 10.)  The parties are reminded and cautioned that Federal Rule of Evidence 412 bars the admission of certain evidence "offered to prove that a victim engaged in other sexual behavior" or "offered to prove a victim's sexual predisposition."  While the Court does not yet issue a ruling on these evidentiary issues, the Court is dubious that many of these allegations about Defendant Jane Doe #1 will be deemed admissible under the protections of Rule 412.

Policy and Initiatives"); ECF No. 83-14 (a list of frequently asked questions regarding the University System of Maryland's "Policy on Sexual Misconduct"); ECF No. 83-15 (a Maryland Attorney General's Office report titled "Doing More: Reducing Sexual Misconduct at Maryland's Colleges and Universities"); ECF No. 83-16 (an SU newspaper article titled "Code of Conduct revised for student benefits"); ECF No. 83-17 (SU's "Procedures for Investigating and Adjudicating Complaints of Sexual Misconduct and Other Sex and Gender-Based Discrimination Against Non-Students.)  These exhibits are presented in a gender-neutral tone, addressed to all students, and published to improve campus safety for both men and women.  The Court carefully considered each of these exhibits and finds no evidence to support Plaintiffs' contentions that they support an inference of SU's alleged gender bias.

Three of Plaintiffs' relied upon exhibits require a degree of added attention.

ECF No. 83-10 is a press release announcing that SU had received a grant from the Avon Foundation for Women ("Avon") to "fund the Campus Against Violence program at SU to activate bystanders to reduce sexual assault, dating abuse and stalking."  Plaintiffs contend that because Avon "supports efforts to end violence against *women*" (ECF No. 83-10 at 2), the Campus Against Violence program "often demonizes male students," (ECF No. 98 at 21).  But despite Avon's commitment to women's safety, SU's press release addresses campus safety in gender-neutral terms, acknowledging SU's "responsibility to provide safe communities *for all students*."  (ECF No. 83-10 at 1 (emphasis added).)  Avon's mission statement does not create an inference of gender bias on behalf of SU, in the absence of additional proof.

ECF No. 83-13 appears to be an article published as part of SU's Campus Against Violence program, titled "Why Men Should Care About Rape."  The article states that "[m]en commit the great majority of all sexually violent crimes," and that "[t]aking into account that the majority of victims know the men who raped them, it becomes virtually impossible for women to

distinguish 'safe guys' from men who are dangerous and therefore a 'potential rapist.'" (*Id.*) But this same article also recognizes that men can be victims of rape as well: "Studies show that a staggering 10-20% of males are sexually violated at some point in their lives." (*Id.*) The article is, decidedly, not gender neutral. It is purposefully designed to be read by men. On its own, the article does not evidence an environment of gender *bias*, but rather awareness that broadly speaking most perpetrators of sexual assault are men. (*Id.*) That said, the article does marginally support an inference that SU had cultivated a campus environment whereby the term *sexual assault victim* was presumed to refer to a woman, and *sexual assault perpetrator* was presumed to refer to a man.

ECF No. 83-18 is a news article titled "Questions for SU President After Facebook Posts." SU's President, Dr. Janet Dudley-Eshbach, had attracted negative press after she posted a photo of her daughter and a Hispanic man with a caption explaining that Dr. Dudley-Eshbach had to "beat off the Mexicans because they were constantly flirting with my daughter." (*Id.*) This Facebook post does not contain any evidence that SU was gender-biased in its application of sexual assault discipline. The comment was arguably in poor taste, but does not represent an opinion on sexual assault.

On these exhibits alone, Plaintiffs have failed to state particular circumstances suggesting that gender bias was a motivating factor behind the alleged erroneous finding. However, Plaintiffs also allege that "[u]pon information and belief, SU possesses communications evidencing Defendants' deliberate indifference in imposing wrongful discipline on Plaintiffs on the basis of their gender." (Fourth Amended Complaint ¶ 154.) Similarly, Plaintiffs allege that "[u]on information and belief, SU possesses communications evidencing SU's intent to favor female students alleging sexual assault over male students like Plaintiffs who are accused of

sexual assault."[10]   (*Id.* ¶ 140.)   Plaintiffs also allege that "upon information and belief . . . Defendants' deliberate indifference was taken to demonstrate to the United States Department of Education and/or the general public that Defendants are aggressively disciplining male students accused of sexual assault."  (*Id.* ¶ 139); *see also Washington & Lee Univ.*, 2015 WL 4647996, at *10 (finding that similar allegations of government pressure to convict male students—paired with other allegations of gender bias—supported a plausible claim for erroneous outcome discrimination).

While these crucial allegations are all based solely "upon information and belief," this is a permissible way to indicate a factual connection that a plaintiff reasonably believes is true but for which the plaintiff may need discovery to gather and confirm its evidentiary basis.  *See* Fed. R. Civ. P. 11(b) advisory committee's note to 1993 amendment.  "[A]llegations in this form have been held to be permissible, even after the *Twombly* and *Iqbal* decisions."  5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224 (3d ed.); *see also, e.g.*, *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from 'pleading facts "alleged upon information and belief"' where the facts are peculiarly within the possession or control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible . . . ." (quoting *Boykin v. Keycorp*, 521 F.3d 202, 215 (2d Cir. 2008)); *Century Metal Recycling Private Ltd. v. Metal Worldwide, Inc.*, Civ. No. JKB-12-2650, 2013 WL 4851696, at *7 n.13 (D. Md. Sept. 10, 2013) (citing to the 1993 Advisory Committee Note to Rule 11(b)); *Simonian v. Blistex, Inc.*, No. 10 CV 01201, 2010 WL 4539450, at *3 (N.D. Ill. Nov. 3, 2010)

---

[10] Plaintiffs must be careful to distinguish gender discrimination—in which men and women are treated differently—as compared to alleged victim/perpetrator discrimination—in which alleged victims are treated differently than alleged perpetrators.  The latter does not present a claim for erroneous outcome discrimination in violation of Title IX, even in cases of sexual assault where statistically speaking women are more often the alleged victim and men are more often the alleged perpetrator.

("[N]othing in either *Twombly* or *Iqbal* suggests that pleading upon 'information and belief' is necessarily deficient.").   A plaintiff may not rely exclusively on conclusory allegations of unlawful conduct, even where alleged "upon information and belief."   For example, Plaintiffs' erroneous outcome allegations would be insufficient if they had simply stated something akin to: "Upon information and belief, procedural defects were motivated by gender bias."   However, in this case Plaintiffs have pleaded *specific factual allegations*.   (*See* Fourth Amended Complaint ¶¶ 139-140, 154.)   The fact that they are pleaded upon information and belief is of no moment because the alleged facts are peculiarly within the possession or control of SU Defendants.

On balance, Plaintiff has alleged a facially plausible claim of erroneous outcome sex discrimination in violation of Title IX.   Proof of SU's sexual assault awareness programs does not, on its own, support a claim for sex discrimination.   But Plaintiffs may have a viable case if they are able to uncover discoverable and admissible evidence that Plaintiffs' gender was a motivating factor behind SU's allegedly flawed disciplinary procedures and wrongful conclusions.   For these reasons, the Court will deny SU Defendants' motion to dismiss Count XII.

### d.  Count XIII: Retaliation

In Count XIII, Plaintiffs allege that they were made to complete a reflection paper in retaliation for their decision to appeal the Board's disciplinary determination.   (Fourth Amended Complaint ¶¶ 156-162.)

The Supreme Court has defined retaliation under Title IX as follows: "when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX."   *Jackson*, 544 U.S. at 174.   A prima facie retaliation claim must show (1) engagement in a protected activity; (2) an adverse action; and (3) a causal connection between the protected activity and the adverse action. *See  Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (applying this

retaliation framework to Title VII claims).[11]   Plaintiffs' claim fails on the second element—Plaintiffs have not alleged that they suffered an adverse action.

Under Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action *materially adverse*, 'which in this context means it might well have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (emphasis added).   To qualify as materially adverse, the challenged action must be more than mere "petty slights or minor annoyances."   *Id.*   The Fourth Circuit has not specifically addressed whether the Title VII material adversity requirement is applicable in cases involving alleged Title IX retaliation.   However, as mentioned *supra* n.11, the Court may look to interpretations of Title VII as persuasive guidance in assessing Title IX claims. Moreover, federal courts across the country have adopted *Burlington*'s material adversity test in Title IX retaliation claims.   *See, e.g.*, *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 868-69 (9th Cir. 2014); *Bowers v. Bd. of Regents of Univ. Sys. of Ga.*, 509 F. App'x 906, 911-12, 2013 WL 563180, at *4 (11th Cir. Feb. 15, 2013) (unpublished table decision); *Dawn L. v. Grater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 374 (W.D. Pa. 2008).

Plaintiffs' challenged action—SU's additional sanction requiring Plaintiffs to complete a reflection paper—is exactly the kind of petty slight or minor annoyance that does not constitute an adverse act.   Further, while not dispositive, the Court takes note of one exhibit attached to Plaintiffs' response in opposition that suggests that—at least with regard to Plaintiff Richard Roe—disciplinary sanctions were actually *reduced* in response to Plaintiffs' appeal.   ECF No.

---

[11] The Court may look to judicial interpretations of Title VII "in shaping the contours of a private right of action under Title IX." *Preston*, 31 F.3d at 207.  Further, since the Supreme Court decided *Jackson* and held that Title IX includes a private right of action for retaliation, 544 U.S. at 173-84, several United States courts of appeals have applied a Title VII framework to Title IX retaliation claims.  *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 388 (7th Cir. 2012); *Emeldi v. Univ. of Or.*, 698 F.3d 715, 724 (9th Cir. 2012); *Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 91-92 (2d Cir. 2011).

98-48 appears to summarize preliminary conclusions following Plaintiff Richard Roe's appeal. The document affirms the findings of the Board, but notes that "[e]vidence to support the sanction(s) imposed was however, disproportionate to the violation . . . ." (*Id.*)  The document goes on to modify Plaintiff Richard Roe's sanctions, reducing the suspension from one year to one semester,[12] and adding a required reflection paper, four to six pages, double-spaced.

For these reasons, the Court finds that Plaintiffs have failed to state a plausible claim of Title IX retaliation, and thus the Court will grant SU Defendants' motion to dismiss Count XIII.

### 6.  *Count XIV: Injunctive Relief*

Plaintiffs seek injunctive relief in Count XIV, requesting an order that, *inter alia*, "require[es] SU [to] expunge Plaintiffs' official SU files of all information related to their interactions with [Jane Doe #1]."  (Fourth Amended Complaint ¶ 168.)  However, a claim for injunctive relief is not a standalone cause of action.  *See MCS Servs. Inc. v. Jones*, Civ. No. WMN-10-1042, 2010 WL 3895380, at *1 n.4 (D. Md. Oct. 1, 2010).  The Court will construe and recast Plaintiffs' Count XIV as a prayer for injunctive relief as a remedy for Plaintiffs' surviving claims, rather than a standalone count.

In seeking a permanent injunction, a plaintiff must satisfy a four-factor test, to demonstrate: (1) that he "has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

---

[12] Plaintiff Richard Roe's one-year suspension is noted in his appeal to SU's Office of Student Affairs.  (ECF No. 98-54 at 13.)

At this stage, the Court is not prepared to state as a matter of law that Plaintiffs cannot satisfy the requirements set out in *eBay*.

SU Defendants argue that an injunctive order would undermine the public interest in ensuring that schools respond effectively to sexual misconduct allegations.  (ECF No. 88 at 52.) The Court is not persuaded.  A permanent injunction will only be ordered if the Court first finds that Plaintiffs' were *impermissibly* disciplined for sexual assault.  SU and other schools will still be able (and be expected) to discipline, or to maintain disciplinary records, in accordance with the law.  But it seems wholly illogical to suggest that the public maintains an interest in records of Plaintiffs' disciplinary sanctions even if the Court finds that Plaintiffs were improperly disciplined.

The Court has similar misgivings with SU Defendants' contention that the balance of hardship weighs against a permanent injunction.  SU Defendants argue that injunctive relief would (a) make SU "unable to comply with federal law," (b) "expose[] it to increased liability," (c) "jeopardize[e] the safety of the university community," (d) "deter[] university administrators from conducting investigations," and (e) "burden victims of sexual assault, by leaving them with no administrative recourse through which to pursue claims of sexual violence."  (*Id.* at 53-54.) Again, these alleged hardships all assume that Plaintiffs were in fact responsible for committing sexual assault.  If, however, Plaintiffs were improperly found responsible for committing sexual assault and improperly sanctioned, then a permanent injunction directing SU Defendants to expunge Plaintiffs' academic records would hardly lead to the parade of horribles described by SU Defendants.

These arguments may be raised again at a later stage in this case.  But on this motion to dismiss, Plaintiffs have alleged sufficient facts for their prayer for injunctive relief.  Thus, the Court will deny SU Defendants' motion to dismiss Plaintiffs' prayer for injunctive relief.

### C. *Plaintiffs' Motion to Voluntarily Dismiss Claims (ECF No. 100)*

On May 28, 2015, Plaintiffs filed a motion to voluntarily dismiss *with prejudice* "all of Plaintiffs' claims against Defendant [Jane Doe #2] . . . and Defendant [Jane Doe #3]," in addition to Plaintiffs' civil conspiracy claim against Defendant Jane Doe #1 (Count IV).  (ECF No. 100 at 1-2.)  Plaintiffs' motion is unopposed.

The Court will grant Plaintiffs' motion to dismiss with prejudice the actions against Defendants Jane Doe #2 and Jane Doe #3.  And the Court will deny as moot Plaintiffs' motion to voluntarily dismiss Count IV against Defendant Jane Doe #1, having already decided to grant Defendant Jane Doe #1's motion to dismiss the same claim in Section III.A.2. *supra*.

### D. *Defendants Jane Doe #2's and Jane Doe #3's Motions to Dismiss (ECF Nos. 84 and 85)*

On April 2, 2015, Defendants Jane Doe #2 and Jane Doe #3 filed motions to dismiss. (ECF Nos. 84 & 85.)  The Court will deny as moot both motions, having already decided to dismiss with prejudice all claims against Defendants Jane Doe #2 and Jane Doe #3 in section III.C. *supra*.

### E. *Plaintiffs' Motion to Seal (ECF No. 101)*

Plaintiffs' unopposed motion (ECF No. 101) to seal Exhibit A5 to Responses 98 and 99 (ECF Nos. 98-8 and 99-8), a document which was docketed under seal as ECF No. 102, will be granted.

## IV. Conclusion

Accordingly, an order will issue GRANTING Defendant Jane Doe #1's motion to dismiss (ECF No. 92), GRANTING IN PART AND DENYING IN PART SU Defendants' motion to dismiss (ECF No. 88), GRANTING IN PART AND DENYING AS MOOT IN PART Plaintiffs' motion to voluntarily dismiss claims (ECF No. 100), DENYING AS MOOT

Defendant Jane Doe #2's and Defendant Jane Doe #3's motions to dismiss (ECF Nos. 84 and

85), and GRANTING Plaintiffs' motion to seal (ECF No. 101).

DATED this 21st day of August, 2015.

BY THE COURT:

_____/s/_____<br>James K. Bredar<br>United States District Judge